## In re ROBERTS.

## In re LAMAR, TAYLOR & RILEY DRUG 'CO.

(District Court, N. D. Georgia, W. D.    October 27, 1915.)

### No. 727.

1. BANKRUPTCY ⬤⇒165—PREFERENCES—MORTGAGE RECORDED WITHIN FOUR MONTHS.

Under the law of Georgia, by which an unrecorded chattel mortgage is void only as against lien creditors or subsequent purchasers, mortgagees, or lienholders in good faith, such a mortgage is not required to be recorded within the meaning of Bankr. Act July 1, 1898, c. 541, § 60a, 30 Stat. 562, as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 (Comp. St. 1913, § 9644), and, if executed more than four months prior to the bankruptcy, failure to record it until within four months does not render it preferential.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 266; Dec. Dig. ⬤⇒165.]

2. BANKRUPTCY ⬤⇒184—VALIDITY OF LIEN—FAILURE TO RECORD MORTGAGE.

The failure of a creditor to record a chattel mortgage taken a few months before the bankruptcy of the debtor, who was a merchant, *held* not fraudulent as to subsequent creditors, where there was no agreement not to record, and the mortgagee did not have reason to suppose the debtor insolvent, or that he was purchasing goods from others on credit.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275-277; Dec. Dig. ⬤⇒184.]

In Bankruptcy. In the matter of C. D. Roberts, bankrupt. On review of order of referee allowing claims of the Lamar, Taylor & Riley Drug Company as a secured claim. Affirmed.

The statement of facts and opinion of the referee in the above-entitled case are as follows:

The question in this case is whether or not the claim of the Lamar, Taylor & Riley Drug Company against C. D. Roberts, bankrupt, should be allowed as a secured claim over the objection of the trustee in bankruptcy, on the following grounds, to wit: (1) Because the same is void under section 60, subdivisions (a) and (b), of the Bankruptcy Act, for the reason that same is a preference. (2) That said claim is based upon a transfer of property, made by said bankrupt while insolvent, to one of his creditors for the purpose of securing a pre-existing debt, and that at the time the said transfer was taken or given the creditor had reasonable cause to believe that the enforcement thereof would effect a preference. (3) That said transfer was recorded within four months next preceding the adjudication in bankruptcy of said bankrupt. (4) That it was the intention of the bankrupt, by the execution and delivery of said mortgage, to prefer one of his creditors, which said intention was known to said creditor at said time.

After notice to all parties at interest, a hearing was had on said matter before me at Cuthbert, Ga., and on the 26th day of July, 1915, I passed an order allowing said claim as a secured claim against the estate of said bankrupt, subject to the proper costs of administration. At said hearing the trustee introduced the following documentary evidence: Schedule A (2), showing the creditors holding securities, and schedule A (3), showing the creditors whose claims are unsecured. The Lamar, Taylor & Riley Drug Company introduced the following documentary evidence: Six promissory notes, all payable to the Lamar, Taylor & Riley Drug Company, and all dated March 2, 1914, and due, respectively, September 1st, $500; September 15th, $250; October 10th,

$500; November 15th, $200; December 10th, $500; and January 1, 1915, $1,531.48, all bearing interest from date at 8 per cent. per annum, said notes secured by a mortgage dated March 6, 1914, given by C. D. Roberts to the Lamar, Taylor & Riley Drug Company "to secure the aforesaid notes, and all other advances and credits which may be extended to me by said Lamar, Taylor & Riley Drug Company, during one year after this date, so that the balance due after making all credits for payments will not exceed $1,000, whether evidenced by these notes or open account charged on the books of said Lamar, Taylor & Riley Drug Company, upon the following described property, to wit: All of the stock of drugs, proprietary and patent medicines, stationery, perfumes, pipes, cigars, tobacco, showcases, tables, chairs, soda fountains, apparatus, and all property of any and every kind now situated in the two stores at Shellman, Ga., known as the City Drug Store and Roberts Pharmacy. This mortgage is on goods changing in specific, and is intended to cover all other articles purchased to supply those sold in the due course of trade. It is hereby agreed that, in case of failure to pay any of said notes at maturity, all of the same shall become due at the option of the second party"—which said mortgage was duly recorded in the clerk's office of the superior court of Randolph county on September 4, 1914, in Book of Mortgages P, p. 63; also the mortgage execution, with the entry of levy made by the sheriff of Randolph county; also a statement of the account due by said C. D. Roberts, bankrupt, to the Lamar, Taylor & Riley Drug Company, for $903.23, the amount owing said Lamar, Taylor & Riley Drug Company, on open account; also the statement of assets and liabilities made by C. D. Roberts to the Lamar, Taylor & Riley Drug Company, dated January 1, 1913.

### Findings of Fact.

I find that on the 6th day of March, 1914, C. D. Roberts, who was in the retail drug business at Shellman, Ga., was indebted to the Lamar, Taylor & Riley Drug Company, hereinafter called the Drug Company, in the sum of $3,531.48, for goods purchased by him from them, and that on said date Roberts, who had gone to Macon, where the said Drug Company is located, to see them with reference to his account, at their request, executed to them a mortgage to secure six notes representing his said past-due account, and to secure all other advances and claims which might be extended to him by said Lamar, Taylor & Riley Drug Company, during one year after its date, so that the balance after making all credits for payments will not exceed $1,000, which mortgage covered all of his stock of drugs, fixtures, etc., located in the two stores at Shellman, Ga., known as the City Drug Store and Roberts Pharmacy. Said mortgage provided that: "This mortgage is on goods changing in specific, and intended to cover all other articles purchased to supply those sold in due course of trade," and that, "in case of failure to pay any of said notes at maturity, all of the same shall become due at the option of the second party." After the execution of said mortgage to secure the then indebtedness of Roberts to the Drug Company, they continued to sell Roberts, during each month thereafter until September, various bills of goods on 30 days' time, all of which said monthly bills were paid, except those for July and August, which, under the provisions of the mortgage, became secured by the mortgage, and, when the mortgage was later foreclosed, it was for the amount owing on March 6, 1914, the date of the mortgage, and also for the accounts for the two months above mentioned, making a total of $4,434.71, besides interest. That said mortgage was not recorded until the 4th day of September, 1914, though there was no agreement that the same be withheld from record, and was foreclosed on October 20, 1914, in the superior court of Randolph county. That on November 6, 1914, an involuntary petition was filed against Roberts, upon which he was, on November 10, 1914, after reference, duly adjudged a bankrupt. That when Roberts gave the mortgage to the Drug Company, on March 6, 1914, he told them that he only owed other creditors about $600, and that his two stocks of goods were worth about $8,000, and that he had about $1,000 in open accounts on his books owing to him, and that the Drug Company did not consider or have reason to believe him insolvent. That when the first of the series of notes secured by the mortgage became due on September 1, 1914, it was sent

to the bank at Shellman for collection, and was returned unpaid, and thereupon, on September 3d, the Drug Company sent the mortgage to the clerk of superior court of Randolph county for record. That while the Drug Company knew that Roberts had increased his account with them by about $900, by failing to pay the July and August bills, they did not know that he had bought a considerable amount of goods from other people, but only knew that he bought from other people such articles as were needed in his trade which they did not keep in stock, and that on September 4, 1914, the date of the record of the mortgage, they had no information that Roberts was insolvent.

### Conclusions of Law.

This matter arises upon the objections filed by the trustee in bankruptcy of C. D. Roberts to the allowance, as a preferred claim, of the claim of the Lamar, Taylor & Riley Drug Company, for $4,434.71 and interest, represented by the six promissory notes and an account, secured by a mortgage. The mortgage is attacked upon the grounds given in the first paragraph above.

It is essential under Bankr. Act, § 60 (a), that the mortgage sought to be set aside as a preference should be made "within four months of bankruptcy," and that "such period of four months should not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required"; and as the mortgage in question here was executed more than four months before bankruptcy, but was recorded within the four months period, it becomes necessary to determine whether or not, under the law of this state, mortgages are required to be recorded in order to be valid as between the parties and ordinary creditors. This question has been settled in Re Jacobson & Perrill, 29 Am. Bankr. Rep. 603, 200 Fed. 812 (District Court, Northern District of Georgia), in which it was held that:

"Under the law of Georgia, the failure to record a chattel mortgage does not render it void as between the parties or ordinary creditors, but only against lien creditors of the mortgagor, or subsequent purchasers and mortgagees or lienholders in good faith, and recording is not 'required' within the meaning of section 60(a) of the Bankruptcy Act."

And as the mortgage was recorded before the institution of the bankruptcy proceedings, it was a superior lien to that of the trustee, which does not take effect prior, at least, to the institution of said bankruptcy proceedings.

It is contended that the failure to promptly record the mortgage rendered the same void; but, having found that there was no agreement between the parties thereto that the same should be withheld from record, I think this question is controlled by the case of Bean v. Orr, 25 Am. Bankr. Rep. 400, 182 Fed. 599, 105 C. C. A. 137 (Circuit Court of Appeals, Fifth Circuit), in which it was held, with reference to a mortgage executed prior to the four months period, but recorded within said period, that the evidence failed to show that the mortgage was given with the intent to hinder, delay, and defraud creditors, and that neglecting to promptly record it was not in itself fraudulent as against other creditors.

It is further contended by counsel for the trustee that this mortgage should not be enforced against the general creditors of the bankrupt, who sold him goods after the date of the execution and delivery of the mortgage, but before its record. This same question was before the court in the case of In re Jacobson & Perrill, supra; but therein the court held that the mortgage was intentionally withheld from the record, and that its effect was to deceive creditors, and, further, that in that case some of the general creditors testified that they would not have sold the bankrupt the goods, had they known of the existence of the mortgage, while in the case at bar it is clear from an inspection of the record, and especially the testimony of Mr. Riley, the manager of the Lamar, Taylor & Riley Drug Company, that he expected and thought that Roberts was buying all of his goods from them, except such little things as they did not carry in stock, and that he did not know or have cause to believe that Roberts had increased his indebtedness to general creditors in the large amount which it appears that he owed at the date of bankruptcy. This fact is, it appears to me, borne out by the statement made by Roberts, at the time of the execution of the mortgage, that while he owed the Lamar, Taylor &

Riley Drug Company something like $3,500, he owed all other creditors only about $600, and I do not believe that the mortgage was withheld from record for a fraudulent purpose, because of the fact that at the time the same was executed, Roberts, in addition to the statement just mentioned, told the Lamar, Taylor & Riley Drug Company that he owned two stocks of goods, worth about $8,000, and that he had owing him on his books about $1,000, so that, when the indebtedness of $3,500 owing the Drug Company and the $600 owing to unsecured creditors are taken from the assets as above stated by him, he had a net worth of about $4,800, so that the Lamar, Taylor & Riley Drug Company could have had no reason to suspect that he was insolvent, and there was no evidence tending to show that any of the above facts were false.

Upon the foregoing facts I entered the order which is hereto attached, allowing the claim of the Lamar, Taylor & Riley Drug Company as a secured claim, subject to the proper costs of administration, and said questions are certified to the judge for his opinion thereon.

Yoemans & Wilkinson, of Dawson, Ga., for trustee.

Hardeman, Jones, Park & Johnston, of Macon, Ga., for claimant.

NEWMAN, District Judge. The question for determination in this case is one which has arisen in a number of cases; that is, whether the mortgage should be allowed as a secured claim.

[1] First. It appears that the mortgage was made in March, 1914, but not recorded until September, and the bankruptcy petition was filed in October. So that the recording of the mortgage was within four months of the bankruptcy, but not its execution. The question on this part of the case is whether the mortgage was one which was required to be recorded under the Bankruptcy Act, as amended, providing that:

"Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required."

I passed on the question as to whether or not the recording of a mortgage as against general creditors, in a case like this, was "required" in Georgia in the case of In re Jacobson & Perrill, 200 Fed. 812, relying upon the authority of our Circuit Court of Appeals in Meyer Bros. Drug Co. v. Pipkin Drug Co., 136 Fed. 396, 69 C. C. A. 240, and in Keeble v. John Deere Plow Co., 190 Fed. 1019, 111 C. C. A. 668.

The Circuit Court of Appeals in the two cases named was considering this question in some cases coming from Texas. The Texas statute (Rev. St. 1895, art. 3328), in reference to the recording of mortgages is stated by Judge Pardee, in Meyer Bros. Drug Co. v. Pipkin Drug Co., supra, as follows:

"This statute has been construed in the Supreme Court of the state of Texas to mean that an unrecorded chattel mortgage shall be void only against lien creditors of the mortgagor, or subsequent purchasers and mortgagees or lienholders in good faith; and, as between the parties to the chattel mortgage and against all ordinary creditors, the record is immaterial."

And, as I stated in that case:

"The statute of Georgia on this subject could be stated in exactly the same language."

I shall adhere to the ruling made in the Jacobson & Perrill Case.

[2] The only other question in this case requiring attention is the rights of creditors who sold goods to Roberts between the time of the

execution of the mortgage and its record. The facts relative to that in this case are not at all like the facts in the Jacobson & Perrill Case. In the Jacobson & Perrill Case the mortgagee knew that Jacobson & Perrill were buying considerable quantities of new goods— indeed, they expected them to do this when they took the mortgage— and they stood by and allowed them to do it, and then claimed that the goods so purchased came within the lien of the mortgage, although it was not recorded, and no notice was given to the sellers of goods during the period that the mortgage was withheld from record. Here I think the most that can be claimed against the mortgagee, the Lamar, Taylor & Riley Drug Company, is that they did not expect Roberts to buy very much from any establishment other than their own, and only such articles as they did not carry in stock, and for him to pay for the same when he bought them. Such is, I think, substantially what the referee finds in his opinion in the case.

On the whole, I do not feel that I would be justified in disagreeing with the referee in the conclusion he reached in this matter. Consequently his action in allowing the claim of the Lamar, Taylor & Riley Drug Company as a secured claim is sustained.

---

⬤≈For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes